UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEANDRE BRADLEY, | ) |
| Plaintiff, | ) |
| v. | ) No. 23 C 5020 |
| | ) Judge Sara L. Ellis |
| RONALD HAIN, individually and in his official capacity as the Sheriff of Kane County; KANE COUNTY, ILLINOIS; ROCHELLE STOCKMAN, individually and in her official capacity; A. KEATY, individually and in his official capacity; S. MCKANNA, individually and in his official capacity; M. AZEMI, individually and in his official capacity; J. DIRECTO, individually and in his official capacity; L. AGUIRRE, individually and in his official capacity; S. FLOWERS, individually and in his official capacity; P. OSMANI, individually and in his official capacity; DR. KUL SOOD, individually and in his official capacity; WELLPATH LLC, a Tennessee corporation, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Deandre Bradley, a disabled pretrial detainee at the Kane County Adult Justice Center ("KCAJC"), filed this lawsuit against Defendants Sheriff of Kane County Ronald Hain (the "Sheriff"), Kane County (the "County"), Rochelle Stockman, A. Keaty, S. McKanna, M. Azemi, J. Directo, L. Aguirre, S. Flowers, P. Osmani, Dr. Kul Sood, and Wellpath LLC.[1] Bradley alleges that Defendants failed to provide him with proper accommodations and health care. He brings claims for their alleged violations of the Fourteenth Amendment, Title II of the

---

[1] Stockman and Sood have not yet appeared in this case. The docket reflects that Stockman accepted a waiver of service of summons on October 22, 2024, Doc. 59, but counsel has not yet filed an appearance on her behalf. No executed service of summons for Sood appears on the docket.

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 974, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the Illinois Civil Rights Remedies Restoration Act, 775 Ill. Comp. Stat. 60/1 *et seq*.  The Sheriff, the County, and Keaty, McKanna, Azemi, Directo, Aguirre, Flowers, and Osmani (the "Correctional Officers," and, along with the Sheriff and the County, the "Kane County Defendants"), as well as Wellpath, have moved to dismiss Bradley's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  At this stage, the Court allows Bradley to proceed only on his ADA, Rehabilitation Act, and Civil Rights Remedies Restoration Act claims against the Sheriff in his official capacity, and his § 1983 claims against Keaty in his individual capacity for Keaty's alleged failure to provide Bradley with an accessible cell and necessary disability management items when Bradley first arrived at KCAJC on March 10, 2023.  The County also remains in the case for indemnification purposes only.  The Court dismisses the remaining claims and Defendants.

## BACKGROUND[2]

Bradley suffers from paralysis in his left leg and uses a wheelchair.  He has limited control over his bladder and bowel, and he wears a catheter and adult diaper for urinary and fecal incontinence.  The Sheriff has responsibility for the supervision, administration, and operation of KCAJC.  Keaty is a KCAJC security officer, while Azemi, Directo, Aguirre, Flowers, and Osmani are all correctional officers at KCAJC.  McKanna works at KCAJC as a lieutenant officer.  McKanna heard Bradley's grievance appeals and supervises the security staff over Bradley.  Wellpath contracts with the Sheriff to provide medical care to inmates at KCAJC.

---

[2] The Court takes the facts in the background section from Bradley's first amended complaint and presumes them to be true for the purpose of resolving the Kane County Defendants' and Wellpath's motions to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

Stockman works for Wellpath as a health care unit administrator, while Dr. Sood, also employed by Wellpath, served as the medical officer at KCAJC.

Bradley entered KCAJC as a pretrial detainee on the evening of March 10, 2023, after his arrest earlier that day by the Village of Sugar Grove Police. Prior to arriving at KCAJC, the Sugar Grove Police processed Bradley and took him to the hospital twice because of his medical conditions. During that processing, Bradley had to stand for considerable periods of time because he did not have his wheelchair. When he arrived at KCAJC, he requested and received a wheelchair. The wheelchair did not fit his body, however, and he did not receive an appropriately sized one for several months. Bradley also informed Keaty that he needed an accessible cell. Keaty told Bradley that a non-disabled man occupied the accessible cell, and it would be too much trouble to move him. Instead, Keaty took Bradley to the medical unit and placed him in a cell that did not have grab bars or an accessible toilet or shower. The cell also did not have an emergency alert button near the toilet or shower. Keaty indicated that if Bradley refused to take the cell, he would place Bradley in segregation. Bradley remained in the non-accessible cell for three days. He fell several times when using the toilet and shower.

After three days, KCAJC moved Bradley to the segregation unit under its COVID protocol. Bradley remained there for ten days. The segregation unit had four accessible cells, three of which individuals without apparent disabilities occupied. Bradley's allegedly accessible cell did not have grab bars or a handicap toilet. Bradley complained, and two days later, KCACJ moved him to another cell in the segregation unit that had these features. He only had a thin non-standard mattress, however, which caused him pain. An additional mattress did not help alleviate his pain, so Bradley decided to use the mattress as a cushion for his wheelchair and sleep there. This solution proved unsuccessful given the incorrect size of the wheelchair.

3

Since arriving at KCAJC, Bradley has been housed in general population, segregation, and the medical unit. He has continued to have trouble with his mattress and wheelchair, which caused pressure sores. While in general population, he had access to one handicapped shower, which both disabled and non-disabled detainees use, causing long wait times. Bradley has not had access to physical therapy facilities or workout equipment because KCAJC does not have such options for individuals with mobility disabilities. He cannot access equipment that detainees use to communicate with family remotely due to his mobility disabilities. When KCAJC has not had a van equipped to transport disabled individuals available, KCAJC has used squad cars to take Bradley to the hospital. According to Bradley, KCAJC does not have x-ray and other medical equipment properly suited for individuals with mobility disabilities. Bradley has complained to Defendants about these problems and filed medical requests and grievances. Defendants have treated these complaints with hostility.

Bradley believes that KCAJC has no rules or policies on housing disabled detainees, leaving decisionmaking to the security department's discretion instead. Additionally, Bradley believes that the Sheriff and Wellpath treat all persons with disabilities the same instead of giving individualized attention to their specific needs. Bradley also believes that the Sheriff and Wellpath do not have a disability coordinator or other person properly trained to assist persons with disabilities, and that the Sheriff and Wellpath have failed to train security officers, medical personnel, and staff in how to assist persons with disabilities.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in

4

the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.  **Claims against the Sheriff and Correctional Officers in their Individual Capacities**

    A.  **Section 1983 Claims**

"[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted); *see also Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015) ("[A]n individual must be personally responsible for a constitutional deprivation in order to be liable, [but] personal responsibility is not limited to those who participate in the offending act."). Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The Sheriff and Correctional Officers argue that Bradley has not sufficiently pleaded their personal involvement to proceed against them in their individual capacities on his § 1983

5

claims. Bradley does not directly address this argument, instead contending that he has generally alleged that all defendants did not provide him with proper medical care and detained him in unreasonable conditions that have caused him pain and suffering, a deterioration of his mobility, and equal access to visitation rights. Such group pleading does not suffice in this case where he does not provide these defendants, aside from Keaty, with any notice of their role in the alleged violations.³ *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."); *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2–3 (N.D. Ill. June 22, 2015) (dismissing claims premised on "group pleading" that "provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendant engaged in that conduct . . . or whether plaintiffs instead contend that only some of the defendants, or possibly even *none* of them, performed a given act"). As a result, Bradley's § 1983 claims against the Sheriff and Correctional Officers in their individual capacities, excepting Keaty, cannot proceed as pleaded. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct."); *Brown v. Dart*, No. 20-CV-4193, 2021 WL 4401492, at *6 (N.D. Ill. Sept. 25, 2021) (dismissing individual capacity claim against the sheriff where the plaintiff had "not plausibly alleged that [the sheriff] was aware of any of his particular conditions").

As for Keaty, Bradley alleges that he informed Keaty of his disability on March 10, 2023, and that Keaty nonetheless assigned him to a non-accessible cell. These allegations provide

---

³ Bradley also identifies McKanna as the person who heard his grievance appeals and who supervises the security staff over Bradley. This comes closer to providing notice to McKanna of his connection to Bradley's claims, but it still falls short. Bradley does not appear to, and indeed cannot, challenge the grievance process. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996). And the first amended complaint does not indicate how merely being a supervisor or hearing the grievance appeals satisfies the personal involvement requirement.

Keaty with sufficient notice of his involvement in the alleged failure to provide Bradley with an accessible cell and necessary disability management items when Bradley first arrived at KCAJC on March 10, 2023, allowing Bradley to proceed against Keaty on this aspect of his claims.[4] But to the extent that Bradley brings claims based on events or circumstances after this date, he has failed to tie Keaty to any of the alleged misconduct and so cannot proceed against Keaty on such claims.

B. ADA and Rehabilitation Act Claims

The Kane County Defendants also argue that Bradley cannot hold the Sheriff or the Correctional Officers liable in their individual capacities for damages under the ADA and the Rehabilitation Act. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) (affirming dismissal of ADA and Rehabilitation Act claims against defendants in their individual capacities). Bradley acknowledges this, Doc. 41 at 7, and so the Court dismisses his ADA and Rehabilitation Act claims against the Sheriff and the Correctional Officers in their individual capacities.[5]

II. Claims against Kane County

The Kane County Defendants argue that the County lacks authority over the Sheriff and KCAJC because, by law, the Sheriff, an independent elected official, operates KCAJC. Under

---

[4] The Kane County Defendants also argue that qualified immunity protects the Sheriff and the Correctional Officers from claims brought against them in their individual capacity, but they base this argument solely on their contention that Bradley has not alleged their personal involvement. Having found that Bradley has sufficiently linked Keaty to the denial of an accessible cell and necessary disability management items on March 10, 2023, the Court does not find the qualified immunity argument persuasive at this time. To the extent Keaty believes he has a qualified immunity defense after discovery, he can raise it at that time.

[5] The Court also finds that, to the extent Bradley brings claims against the Correctional Officers in their official capacities, those claims are duplicative of the official capacity claim against the Sheriff. The Court thus dismisses Bradley's official capacity claims against the Correctional Officers. *See Stanek*, 783 F.3d at 644 (affirming dismissal of defendants in their official capacity where the plaintiffs also sued the school district).

7

Illinois law, the sheriff "shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided." 55 Ill. Comp. Stat. 5/3-6017. Accordingly, "[t]he County is not responsible for policies set by the Sheriff's Office and carried out by its deputies because in Illinois a sheriff is an independently elected county officer, not an employee of the county that he or she serves, and the deputies are employees of the Sheriff's Office." *Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019); *see also Albarran v. Dart*, No. 21 C 1024, 2022 WL 1556103, at *3 (N.D. Ill. May 17, 2022) ("Defendants correctly contend that any substantive *Monell* claim against Cook County should be dismissed because Cook County is not the policymaker at the jail (the Sheriff is)."). The Court thus dismisses Bradley's substantive claims against the County.

That said, "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer . . . in an official capacity." *Carver v. LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003). "Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Id.* Therefore, the County remains a party to the litigation for indemnification purposes only. *See, e.g.*, *Albarran*, 2022 WL 1556103, at *3.

### III. *Monell* Claims against the Sheriff and Wellpath

Next, the Court considers Bradley's *Monell* claims against the Sheriff and Wellpath. Although the Bradley cannot hold the Sheriff in his official capacity and Wellpath vicariously liable under § 1983 for the actions of their employees, *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015), he can attempt to hold them liable for their "own violations of the federal Constitution and laws," *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).[6] To

---

[6] Although a private corporation, the Seventh Circuit treats Wellpath as a municipality because it acts under color of state law in providing medical care to detainees at KCAJC. *See Chatham v. Davis*, 839

state a *Monell* claim, Bradley must allege: "(1) [he] was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)). Bradley can show municipal action through allegations of (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). "Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action." *Dean*, 18 F.4th at 235 (citation omitted) (internal quotation marks omitted)).

Although the Court does not impose a "heightened pleading standard" on Bradley's *Monell* claims, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993), the Court must apply all of *Monell*'s requirements "scrupulously . . . to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability," *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022) (citation omitted). Here, the Court has difficulty even beginning this analysis because Bradley does not clearly identify the alleged municipal actions or delineate to which party the actions are attributable. He sets forth a laundry list of alleged policies but fails to tie them to either the Sheriff or Wellpath or explain how these

---

F.3d 679, 685 (7th Cir. 2016) (*Monell* liability "applies in § 1983 claims brought against private companies acting under color of state law").

municipal actions caused the allegedly unconstitutional medical care and conditions of confinement.[7] And in his response, Bradley argues that it is "legally irrelevant at the pleading stage" whether he claims the Sheriff and Wellpath had an express policy or a widespread practice, or even the lack of a policy, and that discovery will reveal the full extent of their policies and practices. Doc. 41 at 13. But before Bradley can embark on such a fishing expedition, he must formulate a coherent and plausible theory that places the Sheriff and Wellpath on notice of how they, instead of just their employees, allegedly violated Bradley's constitutional rights. *See Bohanon*, 46 F.4th at 676 (reminding courts to apply *Monell*'s requirements "scrupulously"); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("McCauley was required to 'plead[ ] factual content that allows the court to draw the reasonable inference' that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which Mersaides belonged. He did not meet this burden." (citations omitted) (alteration in original)); *Aguilar v. Martija*, No. 22-CV-01043, 2024 WL 4202736, at *6 (N.D. Ill. Sept. 16, 2024) ("Aguilar simply speculates that he might find evidence establishing one or more of an official policy, a widespread practice or custom, or that Dr. Martija and Marcelo acted with final policymaking authority. Such speculation fails to provide Mendrick and the DuPage County Sheriff's Office adequate notice of Aguilar's claim against them. (citation omitted)); *Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *4–5

---

[7] For example, Bradley alleges that the Sheriff and Wellpath did not have a policy related to "ensur[ing] that the correct medication is ordered and prescribed in a timely manner." Doc. 20 ¶ 75. But he does not allege that he has not received correct medication during his detention. The Court also notes that, while Bradley attempt to tie the Sheriff's lack of policies to Bradley's initial placement for three days in a non-accessible cell, the first amended complaint does not necessarily include allegations suggesting this initial placement resulted from a widespread practice instead of a random event. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (although it is "not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience . . . . it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event" (citations omitted) (internal quotation marks omitted)).

(N.D. Ill. Dec. 11, 2014) (dismissing *Monell* claims that contained "only boilerplate conclusions, not well-pleaded facts," noting that the claim "approaches too closely a claim that seeks to hold the City responsible for all official actions of its employees"). Because Bradley has not done so in the first amended complaint, he cannot proceed with his *Monell* claims at this time.

## IV. FHA Claims

The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of the buyer or renter, a person residing in the dwelling, or any other person associated with the buyer or renter. 42 U.S.C. § 3604(f)(1). The Sheriff and Wellpath contend that Bradley cannot pursue his FHA claims because KCAJC does not qualify as a "dwelling" and Bradley does not qualify as a "buyer or renter" of his jail cell under the FHA.

The FHA defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." 42 U.S.C. § 3602(b). It does not, however, define the term "residence." Bradley argues that the Court should liberally construe "residence" as "a place where a person expects to remain for a substantial period and not a mere place of temporary sojourn or transient visit." Doc. 41 at 8 (citing *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 548 (W.D. Va. 1975)). He contends that a jail cell meets this definition, analogizing to cases that have extended the FHA's coverage to summer homes, skilled nursing facilities, drug treatment facilities, group homes, halfway houses, and homeless shelters. *Id.* (collecting cases).

But the Court agrees with the Sheriff and Wellpath that the FHA does not reach a jail like KCAJC. The FHA's stated policy is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. "[L]egislative history confirms that

11

the FHA is intended to promote freedom of movement and freedom of choice in housing." *Sw. Key Programs, Inc. v. City of Escondido*, No. 3:15-cv-01115, 2017 WL 1094001, at *5 (S.D. Cal. Mar. 23, 2017). But "the primary purpose of a jail is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment." *Garcia v. Condarco*, 114 F. Supp. 2d 1158, 1161 (D.N.M. 2000). As such, "the primary purpose of the FHA has no application in the prison context," with jails "designed to strictly regulate where and how prisoners may live," not provide prisoners with the "freedom of choice" in housing. *Id.* at 1161–62. Because Congress did not intend for the FHA "to protect housing discrimination in detention facilities," the FHA does not apply to Bradley's claims against the Sheriff or Wellpath related to his housing at KCAJC. *Id.* at 1162; *see also Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1346 (11th Cir. 2024) (under the FHA, "hotels, motels, the city jail, and bed and breakfasts are all not 'dwellings'"); *Renda v. Iowa Civ. Rts. Comm'n*, 784 N.W.2d 8, 16–17 (Iowa 2010) (analogizing to FHA to conclude that a jail does not qualify as a "dwelling" under the Iowa Civil Rights Act because "the purposes of eliminating discrimination in housing and promoting freedom of choice in housing are not furthered by applying the Act to inmates in a prison context").

### V. Remaining Claims against Wellpath

Next, Wellpath argues that Bradley cannot proceed on his ADA, Rehabilitation Act, and Illinois Civil Rights Remedies Restoration Act claims against it because the Sheriff, not Wellpath, operates KCAJC. First, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the statute, a "public entity"

12

includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). As a contractor that provides medical services to detainees at KCAJC, Wellpath does not fall within Title II's definition of a public entity. *See Bernard v. Ill. Dep't of Corr.*, No. 3:20-cv-50412, 2022 WL 17338154, at *4 (collecting cases). True, the Department of Justice has recognized that Title II covers "[a]ll governmental activities of public entities . . . even if they are carried out by contractors." *Id.* at *3 (alteration in original) (quoting Nondiscrimination on the Basis of Disability in State and Local Government Services, 73 Fed. Reg. 34,466, 34,495 (June 17, 2008)). But, under the statute, liability for a contractor's conduct in such a case "remains with the 'public entity.'" *Id.* at *4. Therefore, Bradley may only pursue his ADA claims against the Sheriff.

For his Rehabilitation Act claims, Bradley must allege that Wellpath receives federal funds. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Wellpath contends that Bradley has not sufficiently done so. Bradley responds that the first amended complaint alleges that KCAJC receives federal funding and that the Court can draw the inference that, as a contractor, Wellpath received some of these funds. Even if Wellpath receives federal funds indirectly through its contract with the Sheriff, the Seventh Circuit has found this insufficient to allow a Rehabilitation Act claim to proceed against the contractor. *See Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120 (7th Cir. 1997) ("The coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement." (quoting *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996))), *superseded on other grounds by Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Therefore, Bradley's

13

Rehabilitation Act claim against Wellpath cannot proceed. *See Eby v. Okezie*, No. 19 C 8404, 2021 WL 4146882, at *2 (N.D. Ill. Sept. 13, 2021) (dismissing Rehabilitation Act claim against Wexford where the plaintiff alleged that Wexford obtained federal funding as part of its contract with the Illinois Department of Corrections); *cf. Bernard*, 2022 WL 17338154, at *6 (allowing Rehabilitation Act claim to proceed against Wexford where the plaintiff specifically alleged that Wexford received federal funds).

Finally, Bradley brings a claim for violation of the Civil Rights Remedies Restoration Act, which makes a violation of Section 504 of the Rehabilitation Act or Title II of the ADA, among other statutes, a violation of the Civil Rights Remedies Restoration Act as well. 775 Ill. Comp. Stat. 60/15. But because Bradley has not sufficiently pleaded an ADA or Rehabilitation Act claim against Wellpath, his Civil Rights Remedies Restoration Act claim similarly fails.[8]

## VI. Punitive Damages

Next, the Kane County Defendants ask the Court to strike Bradley's request for punitive damages to the extent he seeks to recover such damages against them in their official capacities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). Bradley agrees that he cannot recover punitive damages against any defendant in their official capacity, and so the Court strikes the punitive damages request as to any defendant in their official capacities. Bradley, however, may recover punitive damages against any remaining defendant in their individual capacities.

---

[8] Although the Kane County Defendants do not make this argument, to the extent that Bradley brings his Civil Rights Restoration Act claim against the Sheriff and Correctional Officers in their individual capacities, because he cannot pursue an ADA or Rehabilitation Act claim against these defendants in their individual capacities, the Court clarifies that he also cannot pursue his Civil Rights Restoration Act claim against them in their individual capacities.

**VII.     Injunctive Relief**

Finally, the Kane County Defendants ask the Court to strike Bradley's request for injunctive relief. They do not argue that Bradley cannot obtain injunctive relief under the ADA or Rehabilitation Act, only that Bradley has not sufficiently identified the injunctive relief he requests or the policies that they have allegedly violated. Because the Sheriff does not challenge the ADA or Rehabilitation Act claims and the first amended complaint reasonably suggests that Bradley would like injunctive relief to ensure that he receives proper accommodations for his disability going forward, the Court does not find it appropriate to strike his request for injunctive relief at this time. To the extent the Sheriff requires more specific information about the type of injunctive relief Bradley requests, he can explore the issue in discovery.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Kane County Defendants' motion to dismiss [30] and grants Wellpath's motion to dismiss [35]. The Court dismisses Bradley's claims against the Correctional Officers in their official capacity with prejudice. The Court dismisses Bradley's ADA, Rehabilitation Act, and Civil Rights Restoration Act claims against the Sheriff and Correctional Officers in their individual capacities with prejudice, and his § 1983 claims against the Sheriff and Correctional Officers in their individual capacities, except for Keaty, without prejudice. The Court narrows Bradley's § 1983 claims against Keaty in his individual capacity to violations arising from Keaty's alleged failure to provide Bradley with an accessible cell and necessary disability management items on March 10, 2023. The Court dismisses the FHA claims with prejudice. The Court dismisses Bradley's Rehabilitation Act, Civil Rights Remedies Restoration Act, and § 1983 claims against Wellpath without prejudice and his ADA claims against Wellpath with prejudice. The Court dismisses

15

Bradley's § 1983 claims against the Sheriff in his official capacity without prejudice. The Court dismisses Bradley's substantive claims against the County with prejudice, with the County remaining in this case solely for indemnification purposes. The Court strikes Bradley's request for punitive damages to the extent he seeks relief from any defendant in their official capacities. Should Bradley decide to file an amended complaint, he must do so by December 6, 2024.

Dated: November 8, 2024

SARA L. ELLIS
United States District Judge

16