UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEANDRE BRADLEY, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> RONALD HAIN, in his individual and official ) </br> capacity; KANE COUNTY, ILLINOIS; ) </br> ROCHELLE STOCKMAN, in her individual ) </br> capacity; A. KEATY, in his individual capacity, ) </br> S. MCKANNA, in his individual capacity; and ) </br> DR. KUL SOOD, in his individual capacity, ) </br> ) </br> Defendants. ) | No. 23 C 5020 </br></br> Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Deandre Bradley, a disabled individual, filed this lawsuit alleging he did not receive proper accommodations and health care while a pretrial detainee at the Kane County Adult Justice Center ("KCAJC"). In his second amended complaint, he brings claims for alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 974, and the Illinois Civil Rights Remedies Restoration Act, 775 Ill. Comp. Stat. 60/1 *et seq.*, against Ronald Hain, the Sheriff of Kane County, in his official capacity. Bradley also claims that Hain, in both his official and individual capacities, and Rochelle Stockman, Dr. Kul Sood, A. Keaty, and S. McKanna, in their individual capacities, violated his Fourteenth Amendment rights. Hain, Stockman, and Dr. Sood have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Although Bradley's

---

[1] The Court previously ruled on motions to dismiss Bradley's first amended complaint and allowed him to proceed on his ADA, Rehabilitation Act, and Civil Rights Remedies Restoration Act claims against Hain in his official capacity, his § 1983 claims against Keaty in his individual capacity for Keaty's alleged failure to provide Bradley with an accessible cell and necessary disability management items when

second amended complaint sufficiently states individual capacity claims against Hain and a due process violation against Stockman and Dr. Sood, the Court finds that Bradley has not alleged sufficient facts to state a plausible equal protection claim against Stockman and Dr. Sood and so dismisses that claim against Stockman and Dr. Sood without prejudice.

## BACKGROUND[2]

Bradley suffers from paralysis in his right leg and uses a wheelchair. He has limited control over his bladder and bowel, and he wears a catheter and adult diaper for urinary and fecal incontinence. Hain has responsibility for the supervision, administration, and operation of KCAJC. Keaty is a KCAJC security officer, and McKanna works at KCAJC as a lieutenant officer. McKanna heard Bradley's grievance appeals and supervised the security staff over Bradley. Hain selected Wellpath, LLC to provide medical care to detainees at KCAJC. Stockman worked for Wellpath as a health care unit administrator, while Dr. Sood, also employed by Wellpath, served as the medical officer at KCAJC.

Bradley entered KCAJC as a pretrial detainee on the evening of March 10, 2023, after his arrest earlier that day by the Village of Sugar Grove Police. Prior to arriving at KCAJC, the Sugar Grove Police processed Bradley and took him to the hospital twice because of his medical conditions. During processing with the Sugar Grove police, Bradley had to stand for considerable periods of time because he did not have his wheelchair. Keaty processed Bradley upon his arrival at KCAJC. Bradley informed Keaty that he needed an accessible cell. Keaty told Bradley that a non-disabled man occupied the accessible cell, and it would be too much

---

Bradley first arrived at KCAJC on March 10, 2023, and the County for indemnification purposes only. Doc. 62.

[2] The Court takes the facts in the background section from Bradley's second amended complaint and presumes them to be true for the purpose of resolving the motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

trouble to move him. Instead, Keaty took Bradley to the medical unit and placed him in a cell that did not have an accessible toilet or shower. Keaty indicated that if Bradley refused to take the cell, he would charge Bradley with a disciplinary violation and place him in segregation. Bradley remained in the non-accessible cell for three days. KCAJC staff ignored Bradley's requests for assistance, and Bradley fell several times when using the toilet and shower. Because the commode and shower did not have an easily accessible alarm, when Bradley fell, he remained on the floor for some time until a security guard made his rounds.

      On March 13, 2023, KCAJC moved Bradley to the segregation unit for ten days under the COVID protocol that Hain and Wellpath had instituted. The segregation unit had four accessible cells, three of which individuals without apparent disabilities occupied. Bradley's allegedly accessible cell did not have grab bars that allowed him access to the commode. Bradley's cell also had only a thin non-standard mattress placed directly on the floor, which caused pressure sores and pain. Bradley decided to sleep in his wheelchair but slid out of it on several occasions because of its incorrect size. On March 15, 2023, KCAJC moved Bradley to another cell in the segregation unit that had grab bars allowing him access to the commode. He requested a second mattress to put on top of the one on the floor in this cell, but this also did not help alleviate his pain, again forcing him to sleep in his wheelchair.

      During his time at KCAJC from March 10, 2023 to February 7, 2025, Bradley was housed in general population, segregation, and the medical unit. Although he at times had access to one handicapped shower, both disabled and non-disabled detainees used this shower, causing long wait times. Because KCAJC policies and practices allowed security officers to overrule medical staff decisions, security officers interfered and prevented Bradley from obtaining a proper bed and wheelchair based on concerns about institutional security. It took approximately

three months for Stockman, Dr. Sood, and McKanna to obtain a proper medical mattress for Bradley and one year to obtain a proper wheelchair to accommodate Bradley's height, weight, and medical needs.

At the time he arrived at KCAJC, Bradley informed Keaty, Stockman, and Dr. Sood of his prescriptions and his physician, but he does not believe they ever obtained his past medical records or checked his prescriptions, causing him to miss his medications for up to three weeks, including those for blood pressure, pain, and nerve relief. Bradley did not have access to physical therapy facilities or workout equipment because KCAJC does not have such options for individuals with mobility disabilities, and KCAJC ignored his requests for accommodations. KCAJC also did not have x-ray and other medical equipment properly suited for individuals with mobility disabilities. When Bradley had to go to the hospital, KCAJC typically used a squad car because it had no accessible van. On two occasions, KCAJC allowed Bradley to be transported by ambulance, but KCAJC billed Bradley for its use.

Stockman did not have training on accessibility accommodations, but she told Bradley that institutional policy required him to request accommodations through her, after which she would inform Dr. Sood and the medical staff of the appropriate treatment. Instead of seeking medical advice regarding Bradley's requests, Stockman sought to disprove the requests by contacting the Sugar Grove police and the Illinois Department of Corrections about his condition during prior incarcerations.

Dr. Sood told Bradley that he did not have experience handling disability-related conditions like Bradley's. He prescribed Bradley psychotropic medications without seeing or consulting Bradley, which caused Bradley to have severe reactions, including upset stomach, dizziness, and hallucinations. Bradley told Dr. Sood that he had previously used gabapentin to

4

help his neurological pain and asked Dr. Sood to prescribe it for him, but Dr. Sood indicated that institutional policies did not allow him to prescribe gabapentin. The denial of this medication caused Bradley to continue suffering excruciating pain.

Throughout his detention, Bradley complained about his conditions of confinement to Dr. Sood, Stockman, and McKanna. Dr. Sood, Stockman, and McKanna, however, treated Bradley's complaints with hostility and ignorance about the needs of disabled individuals. According to Bradley, Hain, Dr. Sood, Stockman, and McKanna treat all persons with disabilities similarly instead of giving individualized attention to their specific needs.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

ANALYSIS

**I.        Claims against Hain in his Individual Capacity**

Hain challenges the claims Bradley brings against him in his individual capacity. Because § 1983 creates a claim based on personal liability and predicated on fault, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted); *see also Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015) ("[A]n individual must be personally responsible for a constitutional deprivation in order to be liable, [but] personal responsibility is not limited to those who participate in the offending act."). For this reason, Bradley cannot hold Hain liable under § 1983 based on *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). In other words, the mere fact that a sheriff is a supervisor is insufficient to impart liability, even if he was negligent. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable[.]").

Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones*, 856 F.2d at 992). An individual does not have to participate directly in the deprivation, but he or she must have acquiesced in some demonstrable way to the alleged constitutional violation. *Sanville*, 266 F.3d at 740.

Hain argues that Bradley has not sufficiently pleaded his personal involvement. Bradley does not allege that Hain interacted with him personally, although he does allege that Hain knew

6

of Bradley's disability and failed to provide him with an accessible cell, necessary items to accommodate his disability, and access to medical care and medications. While Hain would be unlikely to have had direct involvement in or knowledge of the specific situations related to Bradley, Bradley focuses on the alleged existence of systemic violations related to the housing and treatment of disabled individuals like himself, which he claims allows for the inference that Hain, due to his position as the administrator of KCAJC, would have known of or participated in the alleged violations. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016) (allowing claim to proceed against senior jail official in individual capacity who knew of "systemic lapse in enforcement of a policy critical to ensuring inmate safety" or who "designed or is aware of the institution's deliberately indifferent policy that caused a constitutional injury" (citations omitted) (internal quotation marks omitted)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996) (allowing claims to proceed against prison administrators that involved "potentially systemic" and "not clearly localized" violations); *Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) ("A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail."). Although Hain challenges this characterization, at this early stage in the litigation, the Court finds it premature to dismiss the claims Bradley brings against Hain in his individual capacity for lack of personal involvement.

## II. Claims against Stockman and Dr. Sood

Bradley brings claims for violation of his due process and equal protection rights under the Fourteenth Amendment against Stockman and Dr. Sood. Stockman and Dr. Sood challenge both claims, and so the Court considers them in turn.

7

### A. Due Process Claim (Count III)

Turning first to Bradley's due process claim, Bradley alleges that Stockman and Dr. Sood did not provide him with (1) an accessible cell; (2) necessary disability-management items like a proper wheelchair, mattress, exercise equipment, and accessible transportation; and (3) continuous access to medical care and medications. Stockman and Sood focus only on Bradley's allegations concerning the failure to secure proper medical equipment such as a wheelchair and medical mattress. They argue that Bradley has pleaded himself out of court because he admits that KCAJC security officers had the discretion to overrule the medical staff's judgments and did so here, interfering and preventing Bradley from securing the bed and wheelchair that medical staff had selected for him.

Initially, the Court notes that Bradley does not only allege that Stockman and Dr. Sood violated his due process rights by failing to secure proper medical equipment for him, but he also claims that they did not provide him with continuous access to medical care and medications. Because Stockman and Dr. Sood do not challenge this aspect of Bradley's due process claim, it may proceed against Stockman and Dr. Sood. Additionally, the Court does not find the allegations in the second amended complaint foreclose a potential claim for a due process violation based on the delay in obtaining a proper medical mattress and wheelchair. While it appears from the allegations that KCAJC officers overrode Stockman and Dr. Sood's recommendations, Bradley also alleges that Stockman and Dr. Sood delayed his attempts at obtaining the appropriate mattress and wheelchair, with Stockman, in particular, indicating that all requests for accommodations had to go through her and then taking steps to undermine his requested accommodations. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if

8

the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). While discovery may prove otherwise, at this stage, the Court cannot conclusively find that Bradley has pleaded himself out of court as to his due process claim against Stockman and Dr. Sood based on the failure to obtain a proper medical mattress and wheelchair.

    **B.**    **Equal Protection Claim (Count IV)**

To sufficiently allege an equal protection violation based on class membership under § 1983, Bradley must allege that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). In other words, "[f]or an equal-protection claim based on class membership to survive a motion to dismiss, a plaintiff must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent." *Doe v. Bd. of Educ.*, No. 19 C 00263, 2020 WL 1445638, at *6 (N.D. Ill. Mar. 24, 2020).

Bradley contends that Stockman and Dr. Sood discriminated against him because of his disability by isolating him from other detainees without reasonable justification and by failing to give him priority to accessible facilities. No dispute exists that disability constitutes a protected class. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737 (7th Cir. 2000). Stockman and Dr. Sood again argue that because Bradley alleges that KCAJC and its staff, not the medical staff employed by Wellpath, had the responsibility for housing Bradley and providing detainees at KCAJC with accommodations, he has pleaded himself out of court. Stockman and Dr. Sood also contend that Bradley has not alleged that they intended to discriminate against him. In response, Bradley appears to argue that because Bradley made Stockman and Dr. Sood aware of the conditions in which KCAJC housed him, including the lack of a proper mattress and wheelchair,

9

their failure to intervene to ensure that KCAJC properly accommodated him amounts to an equal protection violation. Bradley points out that he alleges that Stockman indicated that institutional policy required Bradley to request accommodations from her, that Stockman and Dr. Sood had the responsibility to provide treatment for Bradley's disability, that Stockman and Dr. Sood did not obtain his prior medical records, and that Dr. Sood indicated he did not have experience in handling disability-related conditions like Bradley's.

The Court finds that Bradley's equal protection claim against Stockman and Dr. Sood cannot survive Defendants' motion to dismiss. His allegations fail to suggest that Stockman and Dr. Sood's actions had a discriminatory effect, in other words, that they treated him differently from non-disabled detainees with respect to how they considered requested accommodations and treatment. Bradley also has not sufficiently alleged that Stockman and Dr. Sood acted with a discriminatory purpose against disabled detainees, with his only allegation that comes close to alleging discriminatory purpose being one focused on Stockman's alleged personal animosity toward Bradley in seeking to discredit his specific requests for accommodations. Bradley's complaint about equal protection violations appears more appropriately focused on Bradley's treatment by KCAJC security staff, for which he has provided no plausible basis for holding Stockman and Dr. Sood liable. Therefore, the Court dismisses the equal protection claim against Stockman and Dr. Sood.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Stockman and Dr. Sood's motion to dismiss [93] and denies Hain's motion to dismiss [95]. The Court dismisses Bradley's equal protection claim (Count IV) against Stockman and Dr. Sood without prejudice.

Dated: January 13, 2026

                                                  SARA L. ELLIS
                                                  United States District Judge